**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**STEVEN OLSEN,**

             **Plaintiff,**

**v.**                                                    **Case No.  8:05-cv-656-T-TBM**

**JO ANNE B. BARNHART,**
**Commissioner of the United States**
**Social Security Administration,**

             **Defendant.**
_____/

# O R D E R

The Plaintiff seeks judicial review of the denial of his claim for Social Security disability benefits.  For the reasons set out herein, the decision is affirmed.

## I.

Plaintiff was forty years of age at the time of his administrative hearing.  He has a college education and training as a real estate appraiser.  He spent fifteen years in the Coast Guard and has past relevant work was as an aviation electronics technician, claims handler and postal clerk.  He last attempted work as a real estate appraiser.  Plaintiff applied for disability benefits in May 2002, alleging disability as of June 11, 2001, by reason of a combination of impairments that included panic disorder with agoraphobia, generalized anxiety, migraine headaches, mitral valve prolapse, gastritis, and irritable bowel syndrome. The application was denied originally and on reconsideration.

The Plaintiff then received a *de novo* hearing before an Administrative Law Judge (hereinafter "ALJ").  In essence, Plaintiff claimed that he could no longer work at any job because of severe recurrent panic attacks and anxiety, as well as  migraine headaches and irritable bowel syndrome.  Plaintiff testified he suffers from anxiety on a daily basis and panic attacks about four times a week.  He described the panic attacks starting with bad chest pain, like having a hearing attack.  He indicated that the pain then travels to his arm and into his neck, and he gets nauseated, dizzy, and has hot flashes.  According to the Plaintiff, the attack can last for thirty minutes but his anxiety stays with him.  He stated he is unable to work with people, has difficulty concentrating and keeping pace, and is unable to handle pressure.

Regarding his daily activities, Plaintiff indicated that on a good day, he can do some house cleaning, work on projects around the house, exercise, or maybe do errands close to home.  On a bad day, he does not go outside or talk to people, he has stomach pains, and is basically unable to function.  Plaintiff testified that every night around 9:00 p.m. he has a period of "high anxiety," which he describes as having many of the symptoms of a panic attack (chest pain, difficulty breathing, and sweating), but a slower onset.  Plaintiff stated he also suffers from migraine headaches, chest pain, abdominal problems, and irritable bowel syndrome.  He takes medications for these various conditions.  Plaintiff has a 100% disability rating from the Coast Guard, 70% of which is attributable to his panic attacks and 30% of which is attributable to his unemployability.  See Plaintiff's testimony (R. 362-376).

The ALJ also took testimony from Joyce Courtright, a vocational expert (hereinafter "VE").  Assuming an individual of Plaintiff's age, education and work experience who can lift twenty-five pounds frequently, fifty pounds occasionally, and occasionally use a ladder, rope,

or scaffold but who is limited to work in a low stress environment, dealing with only occasional changes of a minor nature, and dealing with things rather than people, the VE opined that such person could not perform Plaintiff's past work but could perform jobs such as bench assembly, photocopy machine operator, and machine tending as with an injection molding machine.  With an additional restriction for goal-oriented work rather than production rate work, the VE opined that such person could still perform these jobs but that the availability of such work would be reduced by 20-50%.  Upon the additional restriction of having panic attacks two or three times a day lasting approximately thirty minutes each in duration and with anxiety remaining for the rest of the work day, the VE testified that the individual would not be able to sustain employment.  See VE's testimony (R. 376-381).

Also before the ALJ were medical records outlining the Plaintiff's medical history. These matters are addressed herein as necessary.

By his decision of October 12, 2004, the ALJ determined that while Plaintiff has severe impairments related to migraine headaches, mitral valve prolapse, irritable bowel syndrome, chronic rhinosinusitis, anxiety, panic disorder with agoraphobia, and personality disorder, he nonetheless had the residual functional capacity to perform a limited range of light to medium exertional work.  Upon this finding and the testimony of the VE, the ALJ concluded that Plaintiff could perform jobs available to him in the local and national economy.  Upon this conclusion, the Plaintiff was determined to be not disabled.  (R. 12-20). The Appeals Council denied Plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner.

II.

In order to be entitled to Social Security disability benefits, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." Id. at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. See id. at § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996). The Commissioner must apply the correct law and demonstrate that she has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. Keeton v. Dep't of Health & Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994) (citing Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are

4

supported by substantial evidence.  Celebrezze v. O'Brient, 323 F.2d 989 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial

evidence, the court is not to re-weigh the evidence, but is limited to determining whether the

record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that

the claimant is not disabled.  Miles, 84 F.3d at 1400; Bloodsworth v. Heckler, 703 F.2d 1233

(11th Cir. 1983).

The scope of review is limited to determining whether the findings of the

Commissioner are supported by substantial evidence and whether the correct legal standards

were applied.  McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Boyd v. Heckler,

704 F.2d 1207, 1209 (11th Cir. 1983).


III.

The Plaintiff raises three claims on this appeal.  As stated by the Plaintiff, they are as

follows:

(1) The Commissioner failed to fully and adequately evaluate the vocational

testimony;

(2) The Commissioner erred in failing to fully evaluate the Plaintiff's mental

impairments; and

(3) The Commissioner erred in failing to give adequate credit to the reports of mental

health professionals or to the findings of another government agency.

By his first claim, Plaintiff raises two distinct issues.  First, citing to Social Security

Ruling ("SSR") 00-4p, he urges that the ALJ erred in failing to inquire of the VE whether her

5

testimony was consistent with the Dictionary of Occupational Titles as required by the ruling. By Plaintiff's argument, this inquiry was particularly important in his case given the fact that the ALJ credited him with a number of significant functional limitations.[1]  Secondly , he urges that the ALJ's conclusion that he was capable of only low stress occupations is ambiguous and a determination beyond the expertise of a VE.  Thus, Plaintiff claims that a more thorough evaluation and analysis of his capacity for stresses in the workplace and in relation to the occupations set forth by the VE was required.

To illustrate why a further development of the record is necessary, Plaintiff cites to two jobs cited by the VE as described in the DOT.  In particular, he notes that according to the DOT, the small products assembler position requires a temperament for attaining precise limits, tolerances, and standards and involves a moderate noise intensity level.  From this description, Plaintiff suggests that the job, not unlike one on an assembly line, involves a production rate and thus is beyond his limitations.  Further, he urges that "it seems unlikely that this position, and the other position cited, would be without some supervision nor be performed, in the general economy, in relative isolation to other persons."  (Doc. 19 at 10). Similarly, for the job of injection molding machine tender, the DOT notes the job requires a temperament for attaining precise set limits, tolerances, and standards and involves a noise intensity of loud.  The job may also require inspection of products for defects and of gauges

---

[1]Here Plaintiff cites to his limitations for only occasional climbing, a need to avoid all exposure to unprotected heights, the ability to tolerate only low stress, a limited ability to respond appropriately to changes in a routine work setting, a limitation to goal-oriented work not based on a production rate, and with no interaction with the public and only occasional contact with co-workers and supervision.

for maintenance and pressure. By Plaintiff's argument, whether these stressors would impact his ability to perform such work is unknown, and given that the ALJ made no inquiry to ascertain these matters from the VE, a remand for further development of the vocational testimony is appropriate.

In response, the Commissioner urges that SSR 00-4p requires an inquiry and explanation by the ALJ only when there is an apparent unresolved conflict between the VE testimony and the DOT. Here, because no such conflict appeared, no further inquiry was or is required.

A review of the transcript reveals that neither the ALJ nor Plaintiff's representative made any inquiry of the VE concerning any inconsistency between her testimony and the DOT.[2] Under SSR SSR 00-4p, an ALJ is required to identify and obtain a reasonable explanation for any conflicts between A VE's testimony and information in the DOT before relying on the VE testimony to support a decision. Further, it directs that the ALJ explain how any identified conflicts were resolved. In this circuit, such rulings are entitled to deference by the court. See Fair v. Shalala, 37 F.3d 1466 (11th Cir. 1994). However, in this circuit an ALJ is also free to rely upon the VE's testimony, even if it is inconsistent with the DOT, and, contrary to SSR 00-4p, the testimony of a VE trumps the DOT. See Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999). The rationale for this approach is derived from a reading of both the DOT and the regulations that advise that the DOT is not the exclusive source of information concerning jobs. By my consideration, while the ALJ was obliged to

_____

[2]Indeed, Plaintiff's representative asked no questions of the VE at all.

make this inquiry under the applicable SSR, the failure to do so does not necessarily require a remand and I am unpersuaded by Plaintiff's argument that remand would serve a useful purpose.  His mere recitation of a job requirement according to the DOT and a suggestion that it might place the job beyond his limits is unpersuasive.  I find this especially so in the circumstances where he had a full and fair opportunity to explore this with the VE herself and chose not to do so, and the matter is raised for the first time in this court.  Further, I am unwilling to assume and otherwise conclude on this record that the VE did not fully comprehend the Plaintiff's limitations or fairly consider them in light of the job  requirements for the jobs she identified as available to the Plaintiff.  Plaintiff provides no demonstration to the contrary and I conclude he is not entitled to relief on this claim.

By his second claim, Plaintiff argues that the decision failed to include a Psychiatric Review Technique Form (hereinafter "PRTF") or reflect that the ALJ had appropriately evaluated his mental impairments in all four functional areas set forth in the PRTF as directed by the regulations.  Citing the regulations at 20 C.F.R. § 404.1520a and <u>Moore v. Barnhart</u>, 405 F.3d 1208 (11th Cir. 2005), Plaintiff urges that the decision must be reversed and the case remanded to evaluate the import of his mental impairments on activities of daily living and episodes of decompensation.[3]  While Plaintiff concedes that the ALJ did consider and reference the assessments by two state agency psychologists who completed PRTFs, he notes that one of the doctors found mild limitations in the area of daily activities, and he urges that

---

[3]It is conceded that the ALJ did address the other two functional areas and concluded Plaintiff suffered moderate limitations in maintaining social functioning and in maintaining concentration, persistence, or pace.  <u>See</u> (R. 15).

even if there was no evidence of episodes of decompensation, there can be no finding of harmless error in the failure to address the activities of daily living.  In any event, Plaintiff further urges that there was evidence of decompensation in light of his own testimony.  Plaintiff cites to his discharge from the Navy for panic disorders and his inability to work as a real estate appraiser due to panic disorder.

In response, the Commissioner concedes that no specific findings were made in these two functional areas, but she urges that a review of the hearing transcript reveals that they were adequately evaluated by the ALJ and Plaintiff was properly determined to have no limitations in either.  As a consequence, a remand is unwarranted.

The regulations require an ALJ to employ a "special technique" when assessing a claimant's mental impairment(s).[4]  See 20 C.F.R. § 404.1520a(a).  Under this technique, the ALJ must rate the degree of functional limitation resulting from the claimant's impairment in four functional areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation."  Id. at § 404.1520a(b)-(d).  The ALJ also must document in his or her decision application of this technique, and the ALJ's written decision must :

> [i]ncorporate the pertinent findings and conclusions based on the technique, . . . show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s), [and] . . . include a specific finding as to the degree of limitation in each of the functional areas . . .

---

[4]As recognized by Plaintiff, the regulations no longer require an ALJ to complete and append a PRTF to his or her decision although he may do so.  See 65 Fed. Reg. 50746, 50757-58 (2000) (codified at 20 C.F.R. § 404.1520a(e)(2)).

Id. at § 404.1520a(e)(2).  In Moore, the Court held that, "where a claimant has presented a colorable claim of mental impairment, the social security regulations require the ALJ to complete a PTRF, append it to the decision, or incorporate its mode of analysis into his findings and conclusions.  Failure to do so requires remand."  Moore, 405 F.3d at 1214.

Here, in support of his claimed mental impairment, the record contains the report of a consulting psychologist (R. 167-69), miscellaneous treatment notes from the Veterans' Administration ("VA") (R. 130-36, 199-215), two assessments of mental functional capacity by nonexamining, state agency psychologists (R. 173-90, 224-38), and progress notes from the Pasco Mental Health Program Group (R. 239-343).  Plaintiff also offered proof of a 70% disability rating from the VA by reason of panic disorder.  The decision reflects that Plaintiff's anxiety and panic attacks were deemed severe by the ALJ.  Thus, a fair review of the record establishes that Plaintiff presented a colorable claim of mental impairment by reason of these conditions and the ALJ was obliged to apply the special technique called for by the regulations.  Giving Plaintiff's reading of the decision the benefit of any doubt, I conclude that Plaintiff is at least partially correct that the decision does not reveal the ALJ's *express* findings as to the degree of limitation in each of the four functional areas required to be considered by this special technique.[5]  However, for the reasons set forth below, I conclude

---

[5]By my reading, the decision can fairly be read to indicate that ALJ did make findings, expressly or impliedly, as to the degree of limitations in all four areas of function and concluded that Plaintiff had moderate limitations in social functioning and concentration, persistence, or pace and no limitations in episodes of decompensation.  Further the decision suggests the conclusion that the limitations in activities of daily living were reflective of a capacity to work.

further that any error in this regard is harmless and a remand for this reason would serve no useful purpose.

A review of the decision reflects express conclusions by the ALJ concerning Plaintiff's moderate limitations in social functioning and in concentration, persistence or pace. See (R. 15).  As Plaintiff urges, the decision does not appear to similarly reflect a specific finding of the degree of limitation in Plaintiff's activities of daily living.  However, as urged by the Commissioner, the decision does reflect a rather thorough consideration by the ALJ of the Plaintiff's daily activities as reflected in the medical record or otherwise reported by the Plaintiff and his wife.  (R. 15-16).  In addition, the ALJ did reach certain conclusions from his review of these activities.  Thus, he concluded, '[s]ome of these activities suggest that the claimant has a greater ability to concentrate then (sic) he might suggest, and some of this behavior also indicates that, while the claimant may be suffering from a severe case of anxiety and panic disorder, he can continue to engage in various activities with certain accommodations. . ."  (R. 16).  On the matter of episodes of decompensation, contrary to Plaintiff's assertion, the decision reflects that the ALJ did consider and address the matter and by my review, he did so in a manner consistent with the applicable standards.  Thus, the decision reflects the ALJ's conclusion that, ". . . there is no evidence of record as to periods of extended decompensation requiring more aggressive therapy."  (R. 16).

According to the regulations, "activities of daily living include adaptive activities, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for grooming and hygiene, using telephones and directories, and using a post office."  See 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00(C)(1).  The regulations further direct

11

that the ALJ assess the qualities of the activities "by their independence, appropriateness, effectiveness, and sustainability" and with a view toward the extent to which the claimant is "capable of initiating and participating in activities independent of supervision or direction." Id.  The regulation further notes that the assessment is focused not on the specific number of different activities of daily living in which functioning is impaired but rather the "nature and overall degree of interference with function."  Id.  As the decision reflects, the ALJ considered a variety of such adaptive activities as testified to by Plaintiff and otherwise revealed in the record.  While the decision does not reflect a summary conclusion as to the extent of the limitations in this functional area, a fair reading of this decision suggests that the ALJ found only limited interference in such activities caused by the Plaintiff's mental impairments. Upon my own independent consideration of the record, I can find no evidence that the ALJ overlooked in addressing Plaintiff's activities of daily living and no good cause to warrant a remand for further consideration of this same evidence.  Significantly, the Plaintiff does not demonstrate a need for remand in this regard either.  Here, because the decision does reflect the ALJ's consideration of this functional area in the light of the available evidence, I find any error in the failure to make a summary express finding on the degree of limitation to be harmless.  See Moore, 405 F.3d at 1214.

Regarding the matter of episodes of decompensation, the regulations describe the same as "exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace. Id. at § 12.00(C)(4).  Further, such decompensation may be "demonstrated by exacerbation in

symptoms or signs that would ordinarily require increased treatment or a less stressful

situation . . ." and may be inferred from "medical records showing a significant alteration in

medications; or documentation of the need for a more structured psychological support system

. . ." Id. Significantly, the regulations define "repeated episodes of decompensations, each of

extended duration" to mean three episodes within one year or an average of once every four

months, each lasting for at least two weeks. Id. Where the episodes are more frequent but of

lesser duration, then they are to be considered in light of whether the functional effects of such

lesser episodes is of similar severity. Id.

On this matter, Plaintiff appears to concede that the medical records appear to

contain no evidence of periods of decompensation. However, Plaintiff urges that evidence of

such is found in his testimony wherein he indicated that he was discharged from the Coast

Guard by reason of a panic disorder and was unable to perform the job of real estate appraiser

by reason of the same condition. However, upon my consideration of this record there is

insufficient evidence to support a finding of repeated episodes of decompensation, each of

extended duration as that term is defined in the regulations. Further, the ALJ's conclusion in

this regard, that the Plaintiff had not needed more aggressive therapy, is supported by the

substantial evidence. Even on the Plaintiff's claim that he suffered more frequent episodes of

shorter duration, the medical records fail to support such episodes to the extent claimed by the

Plaintiff. Further, while Plaintiff complains that the decision reflects an inadequate statement

regarding his credibility, a fair reading of the decision reflects that the ALJ credited Plaintiff

with severe mental impairments that imposed a number significant functional limitations. The

decision further reflects that this evaluation was made in light of the applicable standard in

13

this circuit and under the regulations.  <u>See</u>  (R.15-16).  Further, when the decision is read as a whole, it is readily apparent that the ALJ believed much of the Plaintiff's testimony but discounted his subjective complaints only to the extent that they precluded him from all work. By my conclusion, the ALJ's review of the medical record and other evidence appears fair and accurate, and his statement concerning this functional area reveals his awareness of the applicable standards.  In the circumstances, even if I were to find error in the ALJ's assessment of this functional error, such error is harmless and a remand would serve no useful purpose.

By his final claim, Plaintiff notes that the VA had given him a 70% disability rating by reason of his mental health.  He complains that the ALJ failed to give adequate weight to the VA's opinion and employed inadequate reasons to discount the import of such evidence. Here, Plaintiff notes that applicable case law dictates that a VA rating of disability, while not binding on the ALJ, is evidence that should be afforded great weight.  <u>See</u> <u>Olsen v. Schweiker</u>, 663 F.2d 593, 597 n.4 (5th Cir. 1981), <u>Rodriguez v. Schweiker</u>, 640 F.2 682, 686 (5th Cir. 1981).  By his argument, the fact that the VA relies upon different criteria in determining disability and the fact that the opinions in the VA records were from social workers and nurse practitioners, non-acceptable medical sources, did not end the inquiry as the ALJ was nonetheless required to consider such other sources in evaluating the evidence. Plaintiff urges that the social workers and nurse practitioners from the VA no doubt worked hand-in-hand with treating sources and their opinions should have been considered acceptable medical sources and given greater weight.  Therefore, on this claim, Plaintiff argues that this

case should be remanded for a proper consideration of the VA disability rating and the weight to be given these sources.

In response, the Commissioner sets forth in some detail the ALJ's analysis of the medical and non-medical record and argues that the decision reflects that the ALJ adequately considered all the evidence, including that from the VA, in accordance with the applicable standard.  Upon my consideration, I agree.

By my reading of the decision in light of all the evidence of record, the ALJ gave reasonable consideration to the assessment of the VA before discounting it as controlling in this case.[6]  The decision reflects that the ALJ first reviewed the medical record as a whole and then considered the non-medical evidence before him.  As part of his consideration of the medical record, the ALJ specifically noted that a VA employee had suggested in May 2004 the Plaintiff was unable to work.  The ALJ discounted the opinion because "these opinions have been offered by social workers and nurse practitioners, who are non-acceptable medical sources under the Regulations . . . ."  (R. 16).  In reviewing the non-medical evidence, the ALJ noted the VA's disability rating, and stated, "[f]inally while the non-medical evidence of record indicating a disability rating of 70% by the VA also strongly suggests a conclusion of "disability," the [ALJ} notes that this is an issue reserved for the Commissioner, and that the VA's conclusion of disability is based on laws governing the Department of Veteran's Affairs,

---

[6]The regulations provide that a disability determination by another agency is not binding on the Social Security Administration.  20 C.F.R. §404.1504.  This Circuit's case law holds that, "[a]lthough the V.A.'s disability rating is not binding on the [Commissioner], it is evidence that should be given great weight."  Brady v. Heckler, 724 F.2d 914, 921 (11th Cir. 1984) (citing Olson v. Schweiker, 663 F.2d 593 (5th Cir. 1981) and Rodriguez v. Schweiker, 640 F.2d 682, 686 (5th Cir. 1981)).

15

not the laws governing the Social Security Administration." (R. 16) (citations omitted). I agree with the Commissioner that these statements have to be considered in the light of the ALJ's review of the record as a whole, which simply did not require a conclusion that Plaintiff was disabled from all work. In such light, the record establishes an adequate consideration of the VA's assessment in accordance with the applicable standards. While Plaintiff may disagree with the applicable regulations, they do prescribe that a determination by another governmental agency on disability is not binding on the Social Security Administration because the applicable rules and standards are different. See 20 C.F.R. § 404.1504. Further, opinions on disability are for the Commissioner to make and a statement by a *medical* source that a claimant is unable to work "does not mean that we will determine that you are disabled." 20 C.F.R. § 404.1527(e). As Plaintiff must concede, the regulations also prescribe that nurse practitioners and social workers are not "acceptable medical sources" whose opinions are entitled to controlling weight. See 20 C.F.R. § 404.1513. While Plaintiff urges that the court ignore the plain terms of the regulation, he offers no legal support for doing so.

In conclusion, while the record indicates that the Plaintiff undoubtedly has mental difficulties, when it is considered as a whole, the VA's decision to increase his disability rating to 70% did not dictate that the ALJ was obliged to find him disabled. The matter was adequately considered and addressed. Plaintiff's argument that a remand is necessary so that the rating may be further "dissected" is unsupported and he fails to demonstrate what benefit would result from such a remand. In conclusion, Plaintiff is not entitled to relief on the basis of this claim.

IV.

For the foregoing reasons, the decision of the Commissioner of the United States

Social Security Administration is in accordance with the correct legal standards and is

otherwise supported by substantial evidence.  The decision is affirmed.  Accordingly, the

Clerk is directed to enter Judgment in favor of the Defendant and to close the file.

**Done and Ordered** at Tampa, Florida, this 25th day of August 2006.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of record

17